IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN LABORERS PENSION
FUND, et al.

                Plaintiffs,                   OPINION AND ORDER

    v.                                                        20-cv-717-wmc

WAYNE'S CAULKING, INC., and
WAYNE'S CAULKING, LLC,

                Defendants.

---

Plaintiffs from the Wisconsin Laborers funds, Wisconsin Masons funds and Wisconsin Bricklayers funds have moved for summary judgment against Wayne's Caulking for non-payment of contributions to employee fringe benefit funds under two separate collective bargaining agreements. (Dkt. #21.)[1] At this juncture, the only relevant item before the court is a question of contract interpretation. Due to the unique factual circumstances of this case and the difficulty of calculating damages, the motion for summary judgment is granted.

## UNDISPUTED FACTS

Wayne's Caulking Inc. signed on to the collective bargaining agreements for the Wisconsin Bricklayers District Council in 2005 and the Wisconsin Laborers District Council in 2001. (Def.'s Reply to Pl.'s PFOFs (dkt. #32) ¶ 1-2.) While Wayne's Caulking, Inc., ceased operations, Wayne's Caulking, LLC, was organized in 2019 with the same

---

[1] Plaintiffs have also moved to amend their original brief for the motion for summary judgement and proposed findings of fact (dkt #30), as well as to file the declaration of Daniel Dahl (dkt. #29). Defendant has not disputed either motion and ultimately addressed the supplemented materials in their opposition brief. Accordingly, the court will grant both motions.

ownership and business model. (Id. at ¶ 4, 7.) In particular, Wayne's Caulking, LLC, continued to be bound by the Bricklayers and Laborers collective bargaining agreements, as well as their successor agreements ("CBAs"). (Id. at ¶ 4, 9, 10.) The parties agree that these two entities constitute a single employer and are referred to collectively as "Wayne's Caulking" in this opinion. (Id. at ¶ 19.)

Two employees of Wayne's Caulking, Nick Kirby and Kyle Cruse, performed all their work in Wisconsin counties covered by the two bargaining agreements between 2019 and 2021. (Id. at ¶ 24-25.) While Wayne's Caulking recorded how many hours Kirby and Kruse each worked, it did not record what type of work Kirby and Kruse did on each job. (Id. at ¶¶ 38, 44.) Even so, the parties agree that Kirby and Kruse each performed work covered under the work jurisdiction clauses of both bargaining agreements. (Id. at ¶ 36.) They also agree that Kruse stopped working for Wayne's Caulking by October 2019. (Id. at ¶ 40.) Finally, the parties agree that Wayne's Caulking did not remit any union dues or contributions for union benefit fringe funds as required by both collective bargaining agreements during the relevant period. (Id. ¶ 46-47.)

OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If there is any genuine issue as to any material fact, the court cannot grant summary judgment. *Id*. A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Finally, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

As set forth above, there are no genuine issues of material fact left in this case as to Wayne's Caulking liability for failure to pay union dues and contributions, although there is uncertainty as to the precise nature of the work that Kirby and Kruse did each day, and consequently what amount is owed to each union under their respective collective bargaining agreement. Accordingly, the only matter left to be decided is how to apply the collective bargaining agreements on these facts. *Coplay Cement Co., Inc. v. Willis & Paul Group*, 983 F.2d 1435, 1438 (7th Cir. 1993). As such, the court must decide whether Wayne's Caulking must pay *each* of the two funds for *all* hours worked by Kirby and Kruse as plaintiffs contend, or just the hours spent on work covered by *their* funds' agreement, somehow requiring remittance of one payment for each hour worked by its employees, as Wayne's Caulking advocates.

First, under each Fund's CBA, there are limits to the type of work covered. For instance, the bricklayer's agreement covers in part laying, cutting, finishing, installation, and renovation of natural and artificial masonry done in a select number of counties. (Dec. of John Schmitt, Ex. 2 (dkt. #27) §2.2.) Once an employee of a signing party does any type of covered work, they are considered a covered employee under the CBA, whether or not the employee is otherwise considered a member of that particular union. *McCleskey v. DLF Const., Inc.*, 689 F.3d 677, 680 (7th Cir. 2012) ("for an employee to be covered under the CBA, he or she must be an employee who does bargaining unit work"). If the worker

3

is a covered employee, the employer must remit contributions to the union's fringe benefit funds on behalf of that employee.

Second, in some CBAs, including those at issue in this suit, an employer must remit contributions for "each hour worked" by a covered employee. (Dec. of John Schmitt, Ex. 2 (dkt. #27) §5.15.); see also (Dec. of William Bonlender, Ex. 1 (dkt. #28) appx. A.) Plaintiffs argue that "each hour worked" means just that: as soon as an employee is covered by the CBA, remittances are owed for every hour they work, regardless of whether they are doing tasks covered by that CBA. (Pl.'s Reply (dkt. #33) 9.) As neither party disputes that Kirby and Kruse each performed work covered by both the bricklayer's and laborer's CBAs, this would mean that Wayne's Caulking would have to pay each union remittances based on all hours worked, essentially causing Wayne's Caulking to pay for the same hours twice. (Def.'s Reply to Pl.'s PFOFs (dkt. #32) ¶ 36-37.) In contrast, defendant argues that this would be a misreading of the CBAs. Instead, they maintain that Wayne's Caulking should only have to pay the bricklayer's union for hours spent doing bricklaying work and the laborers union for hours spent doing general laborers work as defined by each CBA, although Wayne's Caulking does not dispute that it has no contemporaneous records that would allow such an allocation.

Third, while no case has fully endorsed the proposition that two unions may both be entitled to the same money for the same hours, nor that the employer is required to pay both in full, there are general lessons that can be gleaned from current case law, most of which focus on the specific language of the applicable CBA. Specifically, regarding remittances for hours spent on "uncovered" work, the Seventh Circuit held in *McClesky*

4

that a CBA need not limit benefit contributions to covered work alone. 689 F.3d at 680. Indeed, interpreting language similar to that in the CBAs at issue here, the Seventh Circuit found that an employer must remit payment for all hours worked, not just those spent on tasks under the defined "work jurisdiction" in the subject CBA. *Id*. As here, the defendants in *McClesky* argued that the work jurisdiction clause of the CBA expressly limited "its contribution obligations . . . [to] work described in [the work jurisdiction] section." *Id.* However, the Seventh Circuit disagreed, holding that defendants' favored interpretation to be the "wrong" one, and in particular, that the section defining the CBA's work jurisdiction "was not intended to, and does not, define bargaining unit work for purposes of fringe benefit contributions." *Id*; *see also Trustees of Suburban Teamsters of Northern Illinois Welfare and Pension Funds v. TMR Services, Inc.*, No. 16 CV 9433, 2018 WL 1397429 at *5 (N.D. Ill. March 20, 2018) (holding that "[t]he performance of covered work triggers coverage under the agreement; it does not limit the amount of contributions owed for that coverage."); *Wisconsin Sheet Metal Workers Health & Benefit Fund v. Zien Services, Inc.*, No. 18-CV-272-JPS, 2019 WL 96385 (E.D. Wis. Jan. 3, 2019) (finding that a CBA can "entail contributions for every hour each employee worked, regardless of whether they were actually doing covered work at any particular time").

Admittedly, *McClesky* turned on the language of that particular CBA, but this court finds no material difference between the work jurisdiction clause in *McClesky* and those at play here. Defendant also tries to distinguish *TMR* and *Zien Services*, arguing that both decisions are similarly decided on the specific language of the CBA at issue in each case, as well as involve different factual backgrounds. No. 16 CV 9433, 2018 WL 1397429; No.

5

18-CV-272-JPS, 2019 WL 96385.  While both courts acknowledge that their rulings turn on the specific facts before them, there again appears no material differences in CBA language before those courts and here.  Plus, defendants fail to point out any important differences in the fact patterns given the cases only articulate the basic legal principle that contributions may be owed on work not strictly falling under a CBA's work jurisdiction.  Regardless, at the very least, all three cases suggest that absent outside evidence or contrary case law, courts may find that a CBA requires contribution for any and all hours worked by a covered employee.  Defendants have neither pointed to any material differences in the CBA language or facts in *McClesky*, *TMR* or *Zien Services* that would warrant overriding that general principal, nor have defendants cited opposing case law, much less case law that would control over that of the Seventh Circuit.  Thus, however unfair requiring the defendant to pay dues and benefits twice for each hour worked, this court is bound to find that the work jurisdiction clause in the CBAs do not, *on their face*, limit remittances to so-called covered work hours.

Fourth, defendant argues that plaintiffs' construction would render the dual-assignment clause of the laborer's CBA meaningless.  That clause states as follows:

> The Employer's obligation to assign the work described in this Agreement or the Exhibit attached hereto, to the members of the bargaining unit is void in the case of work assigned by another collective bargaining agreement if it is claimed by another bargaining unit.

In response, plaintiffs argue that the dual assignment clause is for situations where two unions have the *same* covered work definitions, in which case, a dual assignment clause would provide the unions an avenue to decide which union's CBA covers that specific type

of work. However, neither side has provided case law that definitively supports their interpretation of such a clause, *and* only the laborer's CBA even has such a clause. Moreover, the majority of precedential *and* persuasive cases disfavor reading limitations on contributions into a CBA. *See McCleskey*, 689 F.3d at 680 (finding that contributions must be made if "there is no language . . . that limits [defendant's] obligations to make fringe benefit contributions"); *Chicago Tile Inst. Welfare Fund v. Picha Tile Corp.*, No. 93 C 4473, 1995 WL 584231 (N.D. Ill. Oct. 3, 1995); *Trustees of the Bricklayers & Allied Craftworkers, Loc. 5 New York Ret., Welfare, Apprenticeship Training & Journeymen Upgrading & Lab.-Mgmt. Coal. Funds v. Plaster Master, Inc.*, No. 99 CIV. 5194 (BDP), 2001 WL 34456771 (S.D.N.Y. Jan. 9, 2001). Thus, plaintiff's interpretation appears the correct one, at least under Seventh Circuit case law.

Finally, defendants raise the question of fairness, which as previously alluded to, the court finds fairly persuasive. Again, however, defendants fail to point to any case law or course of conduct that would support interpreting these CBAs to avoid overlapping payments for the same work. As such, the court can only look to the CBAs themselves. *See Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1153 (7th Cir. 1989) ("the text of § 515 is adapted to its purpose, making promises enforceable 'to the extent not inconsistent with law'"). Moreover, in terms of overall fairness, Wayne's Caulking ignores that it signed onto both CBAs, then failed to make *any* contributions *or* track what work employees were actually doing by hour or day. At least on the facts in this case, "[if defendant] has promised to pay two funds for the same work, the Court can determine no reason to release them from that obligation."

7

*Chicago Tile Institute Welfare Fund v. Picha Tile Corp.*, No. 93 C 4473, 1995 WL 584231 at *6 (N.D. Ill. October 3, 1995).  Nor do the equities ultimately favor a defendant who repeatedly, egregiously violated the law by making no payments and failing to document the work being done to unwind the growing contributions due under each CBA, even if the language permitted it doing so.

This is not to hold categorically that two funds will *always* recover for the same hours worked; instead, under the particular facts of this case, the court concludes defendants have offered no legal or practical options but to permit recovery by both Funds on hours worked by employees, given that Wayne's Caulking failed to make any payments to any union for any portion of work hours for years, and also failed to keep any records of what type of work either employee was doing at any particular time, making it nearly impossible to assign hours to specific unions after the fact.  Were it not for defendant's failure to contemporaneously allocate hours to a union, *and* failure even now to offer evidence regarding course of conduct at summary judgment that might distinguish this case from *McCleskey*, the court may have ruled differently.  Instead, defendant is stuck in a hole of their own making.

Certainly, "[w]hen an employer keeps substandard records," the court "should presume that the auditor's calculations are correct and should shift the burden to the employer." *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264 (7th Cir. 2003).  Having created the problem by not paying or even documenting what was owed contemporaneously, and even now failing to offer *any* basis to allocate hours solely to laborer's work or bricklayer's work, there is no longer a practical way to try

8

and tease out a fair allocation for the hours of work years after the fact, or at the very least, the wrongdoer here has failed to offer one. As such, the court has no choice but following the weight of case law, including arguably controlling Seventh Circuit case law, in assigning all hours worked to any union-covered employee. In another case where remittances were made in good faith to a single union for each hour worked, the outcome may well be different, but on the record here, the defendants have violated the law, failed to maintain contemporaneous record-keeping, make *any* remittance of payments due to either union to date despite long ago conceding liability and amounts owed to at least one of the unions on each hour worked, and *still* failed to propose a workable method for trying to make a different allocation. Thus, plaintiffs are entitled to summary judgment on the undisputed calculations submitted by their auditors

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion to amend their brief and proposed findings (dkt. #30) and Dahl's declaration (dkt. #29) are GRANTED without objection.

2) Plaintiffs' motion for summary judgment (dkt. #21) is GRANTED.

3) The clerk is DIRECTED to enter final judgment in the amount of $95,887.20 to plaintiffs Wisconsin Laborers Funds and $111,336.11 to plaintiffs Wisconsin Masons Funds.

Entered this 27th day of October, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge